## Case No. 2,497.

CASEY et al. v. LEARY.

[2 Ben. 530:[1] 8 Int. Rev. Rec. 122.]

District Court, E. D. New York. Oct., 1868.

MARITIME LIEN—SUPPLIES AND REPAIRS—OWNERSHIP OF VESSEL—OATH AGAINST OATH—ATTACHMENT AGAINST NON-RESIDENT.

1. Where a suit was brought against L., as owner of a steamer, to recover for supplies furnished to her in the fall of 1867, and issue was taken on the question of ownership, and the libellants proved a conveyance of the vessel to him in 1865, and an oath of ownership made by him at the custom-house on the same day, and

[3] [From 21 Int. Rev. Rec. 219.]

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

a subsequent oath to the same effect made in November, 1867, and the answer set up that he had been compelled to appear in the cause by an attachment of the vessel as his property, but the defendant, on the trial, testified that he never had any interest in the vessel whatever: *Held,* that if the recorded owner of a vessel, who has sworn that he is her owner, may be allowed to take the position that he has no interest in her, it is not unreasonable to require that such position should be sustained by some other proof than the declaration of the party himself.

2. That the defendant in this case must be held liable as owner.

3. The power of the court to issue an attachment against a non-resident of the district, reaffirmed.

[In admiralty. Libel by Jeremiah Casey and others against Charles C. Leary.]

Benedict & Benedict, for libellant.

Beebe, Donohue & Cook, for defendant.

BENEDICT, District Judge. This action is brought against the defendant, as owner of the steamer Saragossa, to recover the amount of a bill of supplies furnished that vessel in this port, during the months of September, October, November, and December, 1867. No question is made as to the fact that the articles sued for were furnished the vessel and were necessary; but it is insisted that the defendant was not the owner of the vessel nor interested therein. To prove the defendant's ownership, the libellants have put in evidence a bill of sale of the steamer from George Leary to the defendant, executed and recorded on the 1st of November, 1865, together with an owner's oath made by the defendant on the same day, in which he declares "I am a citizen of the United States and the true and only owner of the said vessel." A similar oath made by the defendant in November, 1867, is also put in evidence. And it also appears from the testimony of the defendant that he was engaged in the shipping business and transacted some of the business of this vessel at his place of business in New York. The evidence for the defence consists of the testimony of the defendant, who now swears, that he never was an owner of or interested in the vessel—that she was never sailed for his account or benefit—that his brother, Arthur Leary, was the agent of the vessel, and whatever business of the vessel was transacted by the defendant was done by him in the capacity of agent of his brother Arthur, and by his direction. The defendant further testifies that he does not know for whom the vessel was being run, and that he can give only an impression as to who did own her. That he took the title and made the first oath at the request of his brother, but cannot recollect how he came to make the second one in 1867. No other testimony is produced to explain the defendant's relation to the vessel, and, upon this evidence, I am asked to adjudge that the defendant had no interest in the vessel, and therefore is not liable for these repairs. I

cannot so adjudge upon the unsupported statement of the defendant, as made in court, in contradiction of his oaths at the custom-house. The vessel was conveyed to the defendant by an absolute bill of sale; he then took a solemn oath, declaring himself to be the true and only owner of the vessel. This oath he repeated in 1867, and it seems to me to be asking much when the court is urged to disregard these oaths, and believe only the oath now made in court, to the effect that the former oaths were untrue. The question here, it should be noticed, is not whether the relation of the defendant to this vessel was that of a mortgagee or an owner, but whether he had any interest whatever. He does not claim to have held the title by way of security, but declares that he never was in any way interested in the vessel. This declaration, made in court, is in conflict with his two former declarations made at the custom-house, and he has no right to complain if the court—compelled to elect which oath to believe—rejects the one which is made to avoid a pressing demand. Furthermore, the defendant, although he held the title to this valuable vessel, claims to be unable to say for whose benefit he held it, or who did own her. His brother, Arthur Leary, was the agent of the vessel, but he is not called to say by whom he was employed; nor is George Leary, who executed an absolute bill of sale of the vessel to the defendant, called to explain it, or to confirm the defendant in his present statement. If it be conceded that, notwithstanding the recording act of 1850, a party procuring himself to be recorded as owner of a vessel, and making oath that he is such owner, is at the liberty to take the position that he has no interest whatever therein—a question unnecessary to be considered here—it is certainly not unreasonable to require that the position when taken, should be supported by other evidence than the declaration of the party, contradictory of his oath at the custom-house, when such evidence is within his power. Again, the defendant, although declaring upon the stand that he never had any interest in the vessel, in his answer sets up that his appearance in the action was compelled by a seizure of her, and it is in evidence that the action was commenced by an attachment of this very vessel as the property of defendant, and that he thereupon appeared and procured her release by giving security. If he had no interest in the vessel, it is not easy to understand why he paid any attention to the seizure, nor to see how the attachment of another man's property compelled this man to appear. The fact that when the vessel was seized as the property of the defendant, no person but the defendant appears to have been affected by the seizure; that no person asked for her release; that he did so ask and sets up in defence that her seizure compelled him to appear, are significant circumstances, and it has not been made to appear

how they can be reconciled with the position which the defendant has undertaken to maintain in this action. Upon the question of fact which the case presents, I feel bound therefore, upon the evidence as it stands, to hold against the defendant. A point of law as to the jurisdiction of the court. arising out of the fact that the defendant did not reside, and was not served with process. within this district, has been taken in this cause but not argued, this court having pronounced upon the point in a previous case. The decision in the case referred to—Atkins v. Fibre Disintegrating Co. [Case No. 600]— I have no desire to modify or retract. and it must stand as the law of this court until reversed by an appellate court. Let a decree be entered in favor of the libellant for the sum of $827.78, with interest and costs.